UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

KHALID VAUGHN and SHARIF COBB,

Plaintiffs,

v.

CITY OF MIAMI BEACH, a municipal corporation,
CHIEF OF POLICE RICHARD CLEMENTS in his
individual capacity, OFFICER ROBERT SABATER,
and SEVEN AS YET UNIDENTIFIED POLICE
OFFICERS OF THE CITY OF MIAMI BEACH,

Defendants,
_____ /

## **COMPLAINT FOR DAMAGES**
(Jury trial demanded)

"It is always too late, or too little, or both."

English Statesman David Lloyd George (1863-1945)

1

KHALID VAUGHN and SHARIF COBB, sue the CITY OF MIAMI BEACH, a municipal corporation, ROBERT CLEMENTS, ROBERT SABATER and SEVEN AS YET UNIDENTIFIED POLICE OFFICERS OF THE CITY OF MIAMI BEACH, and say:

## NATURE OF THE CASE

1.     For far too long, a culture of lawlessness has pervaded the City of Miami Beach Police Department. Steeped in a heritage of racism and human rights abuses, the Miami Beach Police Department has maintained customs and practices to this day that violate the United States Constitution and Florida law.

2.     For decades, CITY administrators and elected officials have condoned unlawful violation and abuse of citizens' and tourists' rights, false arrests, cruelty, cover up, and contempt for the law by the CITY'S police officers. For far too long the CITY has refused to properly train or supervise City of Miami Beach police officers to reverse this ingrained culture. The reemergence of the CITY in the early 1980's as a tourist and entertainment destination drawing millions of people and business has been met with by City of Miami Beach police officers with distain and frequent brutality.

3.     All the while, to maintain the illusory appearance of professionalism the CITY has routinely turned its proverbial back and willfully blinded itself to these abuses, refusing to conduct impartial or meaningful investigations of obvious rights violations by its police officers, and choosing to use tax payor dollars to settle lawsuits rather than make any meaningful changes. CITY officials, including those in office today, have either willfully or tacitly remained deliberately indifferent to customs and policies of the Miami Beach Police Department that ignore aberrant and unlawful conduct by police officers, allowing the customs

2

and practices to become official policy.

4.      City of Miami Beach police officers have become so accustomed to the CITY'S policy of acceptance of their misconduct without consequential discipline that they are able to take comfort in the knowledge that they can violate rights and laws with impunity.

5.      And with the advent of cellular telephones capable of video recording, Miami Beach police officers are willing to physically attack, beat, and falsely arrest people who attempt to document the officers' brutality and malign conduct.

6.      Such was the case on July 26, 2021, when KHALID VAUGHN and SHARIF COBB, visitors to the City of Miami Beach, were brutally assaulted and then arrested by SABATER and certain of the SEVEN AS YET UNIDENTIFIED POLICE OFFICERS OF THE CITY OF MIAMI BEACH Defendants merely for using their cellular telephones to video record officers beating another man senseless.

7.      KHALID VAUGHN ("VAUGHN") and SHARIF COBB ("COBB") bring suit here against the CITY OF MIAMI BEACH ("CITY") and the attacking and arresting officers, as well as those who conspired to have them arrested and those that stood by and watched for violation of their federally protected civil rights and for violation of Florida law. They allege that their arrests were false, and the force used was wanton and gratuitous, or the result of negligence; and stemmed from the deliberate indifference of the CITY's policymakers who historically tolerate such conduct.

## JURISDICTION and VENUE

8.      Plaintiffs allege violations of federal civil rights laws and seek in excess of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS in damages, exclusive of interest and costs. This action is brought pursuant to 42 U.S.C. §§1983 and 1988, the Fourth, Fourteenth Amendments

to the United States Constitution, and the tort laws of Florida.  Jurisdiction is founded on 28 U.S.C. §§1331, 1343, 42 U.S.C. §1988, and under the tort laws of Florida.  Supplemental jurisdiction and joinder of parties for additional state law claims in this Court is proper pursuant to 28 U.S.C. §1367(a) because they form part of the same case or controversy.  Under 28 U.S.C. §1391(b)(2), venue lies in the United States District Court for the Southern District of Florida because it is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## SATISFACTION OF PREFILING REQUIREMENTS

9.      The Plaintiffs have satisfied all necessary prefiling requirements to establish Florida tort law claims having submitted notice to the CITY in accord with Fla. Stat. § 768.28. (copies attached as **Composite Exhibit A**).

## PARTIES

10.     The Plaintiffs, KHALID VAUGHN and SHARIF COBB are adult men who reside outside the State of Florida. They were visiting the City of Miami Beach at the time the occurrences complained of occurred. They are otherwise *sui juris.*

11.     The Defendant, CITY OF MIAMI BEACH, is a political subdivision of the State of Florida, a Florida municipal corporation, and at all relevant times had ultimate authority over the City of Miami Beach Police Department and the other defendants. The Defendant CITY was responsible for the hiring, retention, training, supervision, discipline, and conduct of the individual defendants, as all of them were employed by the City of Miami Beach Police Department at all relevant times hereto.

12.     The Defendant RICHARD CLEMENTS has been the Chief of Police of the MBPD since July 1, 2019. As Chief of Police, CLEMENTS had the plenary duties delegated to him by the CITY

OF MIAMI BEACH to institute and enforce policies and practices of the City of Miami Beach Police Department ("MBPD"), including the hiring, training, supervision, investigation of officers' wrongful conduct, and discipline of MBPD officers intended to ameliorate officers' unlawful arrests, use of force, brutality, racial and gender animas, and other abuses of civil and law rights.

13.     The individual officer Defendants, ROBERT SABATER ("SABATER") and the AS YET SEVEN UNIDENTIFIED OFFICERS OF THE CITY OF MIAMI BEACH ("UNIDENTIFIED OFFICERS)[1], were at all times material hereto employees of the CITY and acting under the color of law as police officers for the CITY.

## GENERAL ALLEGATIONS

**Defendant City of Miami Beach**

14.     The City of Miami Beach Police Department is an administrative subdivision of the City of Miami Beach, Florida. Defendant CITY, acting through its City Commission and City Manager, is the ultimate policymaking authority for all officially adopted policies and procedures implemented by employees of the CITY. Further, it is the entity legally responsible for the supervision and training of employees of the CITY'S Police Department.

15.     On information and belief, the City Manager of the CITY delegated to the Chief of Police of the MBPD the authority to develop, direct and implement policies, customs, and/or practices for all sworn law enforcement officers, compiled, in part, in the Miami Beach Police Standard Operating Procedures Manual, which set forth guidelines controlling the use of force including force, arrest procedures and other guidelines controlling the interaction between MBPD law enforcement officers and the general public.

---

[1] The Plaintiffs will act swiftly through discovery to determine the identities of the DOE officers as well as to obtain all documents necessary to support the allegations herein.

16.     The policies, practices, and/or customs of the MBPD fail to conform to constitutional standards in numerous respects, including but not limited to: (1) the failure to ensure proper investigation and discipline of MBPD officers who wrongfully employ excessive force against, and unlawfully arrest, members of the general public; (2) failure to ensure that only persons who are physically and/or mentally qualified to possess the power to act under color of law are employed as MBPD officers; (3) failure to provide adequate training to MBPD officers to prevent excessive force against, and unlawful arrest of, members of the general public; and (4) failure to engage in sufficient testing and evaluation to ensure that MBPD officers comprehend and understand the training that is provided—the CITY sends training material to its officer by email with no follow up to determine whether officers read or show proficiency in the material.

**Failure of leadership, biased internal investigations, and lack of training**

17.     The U.S. Department of Justice, and agencies responsible for the accreditation of police departments, uniformly stress the importance of establishing effective internal affairs policies and procedures to: (a) prevent misconduct within a department; (b) properly address misconduct if and when it occurs; (c) create an ethical environment, to better protect the public and to develop and sustain trust between a police department and the communities it serves.

18.     The DOJ and accrediting agencies have issued guidelines to assist departments in and developing a police culture that values integrity and holds individual officers accountable for their behavior and actions.

19.     Appropriate screening and hiring policies are deemed to be important, but equally important is the use of initial and ongoing training and education that stresses moral and ethical decision-making throughout every officer's career. Further, periodic employee reviews and "early intervention systems" or "early warning systems" are important to identify and rectify a

problematic attitude or behavior. However, the systems must be utilized with integrity to have any meaningful effect on the culture in a given department, including police attitude towards the protection of constitutional rights for members of the public.

20.     Internal Affairs guidelines that have been promulgated stress that "the complaint process should not discourage, dishearten or intimidate complainants, or give them cause for fear." In order to protect civil rights, it has been noted that "departments should afford each complaint a thorough, rigorous unbiased and timely investigation."

21.     Disciplinary guidelines should be applied uniformly, and termination should be implemented where a police officer engages in serious misconduct or criminal acts.

22.     The facts delineated in this Complaint make it clear that the CITY, acting through its Internal Affairs Unit, supervisory personnel, Chief of Police, City Manager and City Commission, have failed miserably to meet the standards for implementing internal affairs protocols that serve to protect the constitutional rights of residents of, and visitors to, Miami Beach.

23.     Criminal and other inappropriate behavior on the part of police agency employees was commonplace both before and during July 2021, including verbal abuse, severe physical abuse, off-duty excessive force, unjustified shootings, warrantless entries into residences, and illegal profiling. Such behavior was the subject of lackluster investigation and weak or non-existent discipline. This toleration of illegal and unethical conduct led directly to continual violations of constitutional rights, including the rights of the Plaintiffs VAUGHN and COBB.

24.      The CITY, within the relevant time frame and leading up to the instant matter failed to fully investigate instances of alleged civil rights violations, engaged in the deliberate obfuscation of wrongdoing in these instances, and/or failed to impose appropriate discipline on the offending officers for egregious violations of constitutionally and legal rights.

25.     The CITY, within the relevant time frame and leading up to the instant matter maintained a custom and practice of hiring persons as police officers who lack sufficient skill, temperament, and/or ability to perform their job in a manner that would not result in law violations.

26.     The CITY, within the relevant time frame and leading up to the instant matter maintained a custom and practice of minimal and insufficient training, as well as lack of oversight to ensure officers engaged in training, and a failure to evaluate officers' proficiency in the training that they did receive.

**A sordid history of civil right violations and cover up**

27.     On or about November 25, 2000, City of Miami Beach police officers Alan Chin and Stanley Wojeck beat Steve Simpson during the course of an arrest. Such force was unnecessary and caused serious bodily injury. Suit was filed in the Southern District of Florida (05-cv-21681) resulting in the City of Miami Beach paying compensation for the officers' wrongful conduct.

28.     On or about January 12, 2001, City of Miami Beach police officers Patrick Quinlan, Robert Silvagni, and Samuel Gam beat and kicked Brenden Casey after his arrest while he was in handcuffs. The assault caused serious bodily injury. A civil suit was filed in United States District Court (04-cv-22093) resulting in the City of Miami Beach paying compensation for the officers' wrongful conduct.

29.     On or about September 7, 2002, Miami Beach police officer P. Jackson-Rice slammed Tamara Reyes into the hood of a police vehicle without justifiable cause. A civil suit was filed in United States District Court (07-cv-22680) resulting in the City of Miami Beach paying compensation for the officer's wrongful conduct.

30.     In February 2003, MBPD officer Varon drove an SUV on the beach in a manner sufficiently reckless to constitute vehicular homicide, causing the death of a teenaged sunbather

and the permanent disfigurement of her sister; the investigation was insufficient, and no criminal charges were ever brought against the officer.

31.     In September 2003, MBPD officer Rice-Jackson was issuing a ticket to a married couple walking their dog in a public park for an unknown reason, and when the woman asked for Rice-Jackson's identification she was assaulted by the officer without cause. MBPD officer Serrano then participated in the incident, at which time both victims were handcuffed, beaten and arrested. The MBPD officers filed a false report claiming self-defense. On information and belief, neither officer has received any disciplinary measures for the offense.

32.     On September 6, 2003, Miami Beach police officer Curtis Hodges shot and seriously injured Flance Registe without justifiable cause. A civil suit was filed in United States District Court (05-cv-20325) resulting in the City of Miami Beach paying compensation for the officer's wrongful conduct.

33.     In November 2003, MBPD officer Dominguez drove a city vehicle in a reckless manner, causing an accident that severely injured four persons on two motorcycles; the investigation into this matter was decidedly lacking.

34.     In November 2003, MBPD officer Ortivero interacted with Melissa Plata in an overly aggressive manner and upset with her lack of interest in his advances, proceeded to assault and arrest her, ripping off (and never returning) her prosthetic hand. A civil suit was filed in United States District Court (07-cv-23004) resulting in the City of Miami Beach paying compensation for the officer's wrongful conduct. Despite voluminous evidence of his aggressive behavior and an obviously falsified arrest report, on information and belief officer Ortivero never received any discipline for his false arrest and egregiously excessive use of force.

35.     In November 2003, MBPD Lt. E. Yero disobeyed orders from a City of Miami superior

during a joint law enforcement exercise, specifically the policing of the FTAA-related demonstrations on Biscayne Blvd. in Miami, and Lt. Yero wrongfully permitted the discharge of tear gas to disperse a gathering of hundreds of persons involved in First Amendment-protected activity. Lt. Yero further permitted officers under his command to utilize other chemical agents and batons on unarmed demonstrators. On information and belief, neither Lt. Yero nor any of the officers under his command ever faced any disciplinary action for their roles in the FTAA, despite sworn testimony in federal lawsuits from numerous Miami Police officials relating to the misconduct.

36.     On November 8, 2003, Miami Beach police officer William Sinkes and two other officers orchestrated the physical assault of Phillip Klote, resulting in serious bodily injury. A civil suit was filed in United States District Court (07-cv-22861) resulting in the City of Miami Beach paying compensation for the officer's wrongful conduct.

37.     In early 2004, police were called to the residence of MBPD Sgt. Berrian, who had engaged in acts of domestic violence against his wife, who had a bleeding lip and bruises on her head; the investigation was minimal and no discipline was found to have been imposed upon this officer, and there is no record of anger management classes or other minimal activity to address this problem.

38.     In February 2004, MBPD officers Rabelo, Garcia and McCue entered into a private apartment without consent, assaulting the resident, thereby engaging in violations of the Fourth Amendment protections against warrantless entry without probable cause and against excessive force. After an inadequate investigation the IA Unit cleared the officers of wrongdoing.

39.     In February 2004, a young man ran from officers; when he was grabbed and subdued, the MBPD officers, including K. Millan, proceeded to kick the arrestee in the body and face numerous times, in violation of the Fourth Amendment. The IA Unit ruled the incident as "unsubstantiated."

40.     On or about March 7, 2004, Gustavo Toala was falsely arrested and beaten by multiple officers of the City of Miami Beach Police Department. A civil suit was filed in United States District Court (08-cv-20884) resulting in the City of Miami Beach paying compensation for the officers' wrongful conduct.

41.     In 2004 City of Miami Beach police officers falsely arrested and used excessive force on Luis Arraiz. Suit was brought in Miami-Dade County case number 2004-025469-CA-01, wherein the City of Miami Beach paid compensation to Mr. Arraiz for the officers' illegal conduct.

42.     In May 2004, A woman was parking her vehicle with a valet, and was in the vicinity of MBPD officers E. Cruz and G. Gutierrez; one of the officers asked the woman to move, and this request led to a physical assault by the officer and numerous racial slurs, witnessed by bystanders; after investigation, the IA Unit inappropriately dismissed the excessive force claim and imposed minimal punishment for the racial slur.

43.     In June 2004, a man was taken to the Miami Beach holding facility, where MBPD officers Booker and Abercrumbie proceeded to physically assault him and apply chemical agents without justification, after which they falsified a report with regard to the incident, claiming that the injuries sustained by the victim were "self-inflicted." After a cursory investigation, the IA Unit opined that the Fourth Amendment violations were "unsubstantiated" and exonerated the officers with respect to the false report.

44.     In October 2004, a young man was engaged in First Amendment-protected activity, specifically videotaping events in public including the activities of MBPD officers Masters, Doce,

and Vernon, to which the officers objected for unspecified reasons. As to charges made by the victim to the IA Unit of excessive force and abuse of authority, the result was again an inadequate and biased investigation, and a finding that the charges were unsubstantiated.

45.     In August 2004, a man was stopped by MBPD officer Nolan during a traffic stop, and without justification the man was physically assaulted by a punch to his face delivered by the officer without cause. The IA Unit ruled the incident as "unfounded," essentially declaring that the assertion was a total fabrication.

46.     In November 2004, MBPD officers E. Cruz, G. Gutierrez and J. Periera were working off duty at a night club, at which time the victim was leaving the club, but apparently not fast enough for the officers. The victim was knocked to the ground, brutally beaten causing facial injuries including a fractured nose, and tasered without justification. The officers arrested the victim and falsely charged him with felony-level crimes including battery on a police officer. The testimony of independent witnesses caused the State Attorney's Office to dismiss all charges. The victim filed a complaint with the I.A. Unit, which in typical fashion only sustained a portion of the charges failing to impose sufficient discipline. On information and belief, the officers were not discharged from the MBPD despite their falsification of the arrest report and the savage beating of this victim.

47.     In January 2005, an emotionally disturbed person entered into the private bathroom of a public house, causing the bartender to summon police. MBPD officers in plainclothes, M. Muley, M. Schoenfeld and C. Pfrogner responded. Officers Muley and Schoenfeld burst into the bathroom with guns drawn and startled the person, who, believing that a robbery or such was occurring fled down the hallway, at which time officer Muley gave chase and shot the unarmed person multiple times. Despite the obvious Fourth Amendment violation(s), on information and belief the officers were never disciplined.

48.     On January 15, 2005, City of Miami Beach Police officers unjustifiably shot Barret Robbins causing serious bodily injury and near death. A civil suit was filed in United States District Court (09-cv-20804) resulting in the City of Miami Beach paying compensation for the officers' wrongful conduct.

49.     In March 2005, a young man was being transported to jail, at which time MBPD officer Armatrading tasered the victim three (3) times in clear violation of his Fourth Amendment right to be free of gratuitous force, and then refused to provide for appropriate medical assistance. Following a complaint to the IA Unit, there was only a partial finding of wrongdoing, and there is no information indicating that the officer received appropriate discipline and corrective re-training.

50.     In April 2005, a woman was involved in an altercation and sought assistance from MBPD officers L. Corps and D. Gotsis. The officers decided to arrest this woman, and they handcuffed her and used excessive force in dealing with her. The victim filed an I.A. complaint, and the findings of the I.A. Unit were that the officers did not engage in excessive force but did have inaccuracies in their report; in accord with MBPD I.A. practice, the more serious charge was deemed as "unfounded" while the less serious charge was upheld, despite the evidence supporting all charges against the officers.

51.     On or about April 10, 2005, City of Miami Beach Police officer Newell Wilder arrested Broy Kenneth Rodriguez without probable cause under circumstances that demonstrate a lack of training and restraint. A civil suit was filed in United States District Court (08-cv-22645) resulting in the City of Miami Beach paying compensation for the officer's wrongful conduct.

52.     In June 2005, a young man had a brief encounter with MBPD officer R. Lawrence, which resulted in the victim being grabbed by the throat without justification. Following a complaint to

the I.A. Unit, the complaint was deemed as "unsubstantiated."

53.     In early July 2005, MBPD officers D. Simon, D. Gotsis ( a repeat offender), and T. Lincoln were involved with a young man whose behavior they found inappropriate. The victim was knocked to the ground, struck with an asp in the groin area, choked with an asp, and Sgt. Simon twisted his foot on the victim's face, causing blood to spurt out. Multiple independent witnesses, and another MBPD officer, verified the facts involved in this gratuitous display of excessive force. The I.A. Unit, however, deemed the more serious aggravated battery and battery charges against the officers to be "unsubstantiated," while upholding more minor charges, leading to far less severe sanctions than were justified under the circumstances.

54.     In February 2006, an off-duty City of Miami police officer was picking up his children when he was assaulted. The officer held the assailants at bay until the MBPD arrived, at which time the Miami officer was struck in the neck, had a gun placed to his head, and MBPD officer D. Bates applied a Taser for good measure. Following a complaint, the I.A. Unit exonerated the MBPD officers of excessive force, while agreeing that Officer Bates failed to file a "use of force report."

55.     In March 2006, a man was arrested for suspected DUI. MBPD Officer D. Smith struck the victim on three separate occasions. The man filed an I.A. complaint because of his right to be free from gratuitous force. The I.A. Unit deemed the charge to be "unfounded."

56.     In March 2006, a male arrestee was in the MBPD's holding area. At that time, MBPD officers J. Reina, E. Holbrook, and a third officer, entered the area and proceeded to administer a beating. The assault left significant bruising on the victim's left side. The I.A. Unit ruled that the charge was "unfounded."

57.     On May 27, 2006, City of Miami Beach Police officer Jenny Valazquez first caused a minor

traffic accident, then assaulted the driver Bruce Sapp. Valazquez unlawfully forced Sapp from his

car and slammed his head and torso against the hood.  Valazquez then attacked the passenger of

the car doing the same thing. Valazquez told both men, "Your black ass is not supposed to be on

the beach. You don't belong down here." A civil suit was filed in United States District Court (10-

cv-21464) resulting in the City of Miami Beach paying compensation for the officer's wrongful

conduct.

58.    In July 2006, a person encountered several officers, and after a brief verbal exchange,

MBPD officer E. Perez threw a punch into the victim's face. Following an I.A. complaint, the I.A.

Unit declared the charge to be "unsubstantiated."

59.    On July 30, 2006, City of Miami Beach Police officers Wayne Holbrooke, Jose Reina,

Alexander Torres, and Dimitri Gotsis, beat and battered Travis Bailey unlawfully causing serious

injury. These officers unlawfully arrested Bailey and his mother Carolyn Bailey. A civil suit was

filed in United States District Court (10-cv-20998) resulting in the City of Miami Beach paying

compensation for the officers' wrongful conduct.

60.    In August 2006, MBPD officer E. Macias was tasked with transporting a young woman for

a DUI test. Instead, he made a detour down an alley where he groped, fondled and kissed the victim

while she was still handcuffed. The woman agreed to wear a wire when meeting the officer again,

and gathered evidence sufficient for officer Macias to be charged with official misconduct, battery

and perjury. Somehow, the charges were lowered significantly, and officer Macias continued his

service on behalf of the residents of Miami Beach.

61.    On September 2, 2006, City of Miami Beach police department officers James Nash,

Douglas Dozier, Andrew Dohler, and Robert Acosta unlawfully entered the residence of Janet

Feliciano, a visibly pregnant woman. Officers Dohler and Dozier repeatedly physically assaulted

her while Officers Acosta and Nash stood by and watched. As a result of the assault Ms. Feliciano miscarried her child. These same officers unlawfully searched the apartment.

62.     On August 30, 2007, Garry Larkin, a City of Miami Beach police detective and two other Miami Beach police officers conducted a warrantless and unlawful search of the home of Frank Quintana, and then unlawfully arrested Mr. Quintana without probable cause. (10-cv-5087).

63.     On September 17, 2007, officer Deborah Doty and three other City of Miami Beach Police officer kicked and punched Ian Cooley during his arrest and after causing serious bodily injury. A civil suit was filed in United States District Court (09-cv-22795) resulting in the City of Miami Beach paying Ian Cooley compensation for the officers' wrongful conduct.

64.     On February 8, 2008, MBPD officer Phillip Elmore falsely arrested and then brutally assaulted Dario Vasquez without any lawful justification. A civil suit was filed in United States District Court (12-cv-21024) resulting in the City of Miami Beach paying Mr. Vasquez compensation for the officers' wrongful conduct.

65.     On February 16, 2008, MBPD officers Phillipe Archer and Michael Muley, brutally and unlawfully beat Andres Duquesne while officer Bernadette Maher stood by and watched after he was unlawfully arrested. A civil suit was filed in United States District Court (12-cv-20575) resulting in the City of Miami Beach paying Andres Duquesne compensation for the officers' wrongful conduct.

66.     On April 14, 2008, MBPD officer Thamyris Cardelle falsely arrested Henry Isasi for a bogus allegation of threatening a public official.  A civil suit was filed in United States District Court (12-cv-21728) resulting in the City of Miami Beach paying Mr. Isasi compensation for the officer's wrongful conduct.

67.     On June 28, 2008, officers Phillipe Archer (a repeat offender), Neill Fagan, and Mishart

Torres (a repeat offender), falsely arrested Miguel Lawson. At his first appearance, the presiding magistrate determined there was no probable cause. A civil suit was filed in United States District Court (12-cv-22244) resulting in the City of Miami Beach paying Mr. Lawson compensation for the officer's wrongful conduct.

68.     On October 8, 2008, City of Miami Beach police officers Alerto Estraviz, Steven Duque, and Joseph Duque, unlawfully tasered Carlos Acutin and used excessive force causing serious injury during an arrest. A civil suit was filed in United States District Court (10-cv-27133) resulting in the City of Miami Beach paying Acutin compensation for the officers' wrongful conduct.

69.     On December 2, 2008, MBPD officer Peter Wyatt falsely arrested Edward Blackshear, and falsely claimed that Blackshear resisted arrest. A civil suit was filed in United States District Court (11-cv-20619) resulting in the City of Miami paying Mr. Wyatt compensation for the officer's wrongful conduct.

70.     On January 1, 2009, City of Miami Beach police officer Robert Lawrence pushed and then struck Jeffrey Roth without provocation during an unlawful arrest. A civil suit was filed in United States District Court (10-cv-12892) resulting in the City of Miami Beach paying Jeffrey Roth compensation for the officer's wrongful conduct.

71.     On February 28, 2009, MBPD officers Alexander King and Luis Torres unlawfully profiled and arrested Denrick Bruce, a Black man. At a subsequent trial, these officers and officer Sarah Szuster gave false testimony in an attempt to justify the arrest, fabricating a story of a drug transaction. A civil suit was filed in United States District Court (12-cv-20834) resulting in the City of Miami Beach paying Denrick Bruce compensation for the officer's wrongful conduct.

72.     On March 8, 2009, Miami Beach police officers Andy Lozano, Raymond Chambers, and Julio Blanco beat and stomped Steven Gomez without lawful cause. A civil suit was filed in United

States District Court (09-cv-22988) resulting in the City of Miami Beach paying compensation to Steven Gomez for the officers' wrongful conduct.

73.     On March 13, 2009, MBPD officers Frankly Forte and Elliott Hazzi dragged a gay man to the ground and began beating him without lawful cause. Mr. Harold Strickland, a by-stander who witnessed the unlawful attack, called 911 to report what was happening. When Forte and Hazzi noticed Strickland on the phone, they told him they "knew what he (Strickland) was doing," and began to call Mr. Strickland anti-gay epithets. The officers took Mr. Strickland into custody for loitering and prowling and continued to spew anti-gay slurs at Mr. Strickland. Suit was filed in the United States District Court (10-cv-24233) resulting in the City of Miami Beach paying compensation to Mr. Strickland for the officers' wrongful conduct.

74.     On November 7, 2009, MBPD officers David Price and M. Rojo, and an unidentified officer falsely arrested Angel Baez-Aponte in the hallway of his residence and began beating and punching him. The assault continued as Mr. Baez-Aponte was in handcuffs and being transferred to the police department. Suit was filed in the United States District Court (12-cv-24371) for false arrest, battery, and malicious prosecution, resulting in the City of Miami Beach paying compensation to Mr. Baez-Aponte for the officers' wrongful conduct.

75.     On November 28, 2009, MBPD officer Thamyris Cardelle (a repeat offender), again, made a false arrest by falsely detaining Luis Amato at his home based on no more that animas and spite. Suit was filed in the United States District Court (14-cv-22901) for false arrest, battery, and malicious prosecution, resulting in the City of Miami Beach paying compensation to Mr. Amato for the officers' wrongful conduct. Although this was the second unlawful arrest by Officer Cardelle in as many years known to the CITY it took no disciplinary or remedial action against Cardelle.

76.     On January 10, 2010, MBPD officer Paul Guasto falsely arrested Antwon Emery and then used excessive force slamming Emery into the trunk of his car and using handcuffs as a weapon. Suit was filed in the United States District Court (11-cv-20632) resulting in the City of Miami Beach paying compensation to Mr. Emery for the officer's wrongful conduct.

77.     On July 10, 2010, MBPD officer Erick Pagan brutally beat Bryce Gomez with his fists and a baton without any lawful purpose, and then falsely arrested Mr. Gomez. Suit was filed in the United States District Court (13-cv-21811) for battery and excessive use of force resulting in the City of Miami Beach paying compensation to Mr. Gomez for the officer's wrongful conduct.

78.     On Memorial Day 2011, Raymond Herisse, a 22-year-old man with no history of violence was gunned down by more than 100 rounds fired by Miami Beach police officers. Mr. Herisse was attending *Urban Beach Weekend* an annual event held in the CITY that is popular with young African Americans. Mr. Herisse was African American. No credible evidence has ever been produced to identify the officers that killed Herisse or to determine the necessity for the deadly use of force. The officers discharged their weapons recklessly, shooting five other African American by-standers, Sarah Garcia, Carlton St. Louis, Cedric Perkins and two others. Multiple civil rights and tort lawsuits were filed based on the CITY'S failure to properly train and supervise it officers' use of force, including but not limited to: (14-cv-21823) (14-cv-22013) (14-cv-22111), in which the CITY was forced to pay compensation for its customs and practices of constitutional violations. Notably, one of the officers involved was Phillippe Archer who was known to the CITY for repeated violations of citizens' rights. Consistent with the CITY'S pattern of deliberate indifference to the rights of the general public no sufficient discipline, training, or remedial measures were taken by the CITY to prevent further mayhem and reckless discharge of weaponry by MBPD officers.

79.     On three separate occasions between October 2011 and January 2012, MBPD office Smith Orisme (a repeat offender) violated Florida law by accessing information on the DAVID data base for non-official purposes. In fact, Orisme obtained the information for the purpose of harassing another law enforcement officer. Suit was filed in the United States District Court (15-cv-21292) for constitutional and tort violations of privacy resulting in the City of Miami Beach paying compensation to Florida Highway Patrol Trooper Donna Watts for the officer's felonious conduct. Based on a review of public records it appears that the CITY failed to pursue criminal charges against Officer Orisme demonstrating preferential and unequal treatment of its officer to further a pattern of deliberate indifference to legal rights of others.

80.     On November 9, 2012, Officers Wayne Jones, Manuel Cano, and Tavares Smalls of the MBPD, confused and embarrassed after they failed to act during gunfire from an unknown group of gang members determined to arrest Eric Rowe, Elicsonne Baptist, and Norman Reaves, three men who had acted to protect them, without any lawful cause. Suit was filed in the United States District Court (2015-cv-20088) for the false arrests resulting in the City of Miami Beach paying compensation to the three men for the officers' wrongful conduct.

81.     On April 15, 2014, MBPD officer Joseph Gonzalez and Giordano Cardozo unlawfully entered the apartment of Candace Padavick without any probable cause and against the wishes of a cab driver who advised the officers that there was no dispute as to payment of cab fare. Inside the apartment, the officers forcibly and unlawfully detained Ms. Padavick while she was wearing a robe having just exited the shower. The robe fell off and the officers forced Ms. Padavick to remain in custody naked while at least 9 other MBPD officers entered the apartment. Ms. Padavick was arrested without probable cause. Suit was filed in the United States District Court (2017-cv-21342) for the false arrests resulting in the City of Miami Beach paying compensation to Ms.

Padavick for the officers' wrongful conduct.

82.     On June 26, 2013, Phillipe Archer, in yet another demonstration of disregard for civil rights, began to assault a woman, punching her in the face and driving her to the ground. A passerby, Andrew Mossberg, called 9-1-1 begging the operator to send someone to stop Archer. Then Archer turned on Mossberg, pummeling him with blows to the head and body. Suit was filed in the United States District Court (2015-cv-24632) for the false arrests resulting in the City of Miami Beach paying compensation to Mr. Mossberg for the Archer's wrongful conduct.

83.     On January 26, 2014, Officer Mishart Torres, again used excessive force while illegally detaining Adrienne Evans, breaking her arm. No formal arrest was made however Ms. Evans was detained for more than an hour. Suit was filed in the United States District Court (2015-cv-20864) for the false arrests resulting in the City of Miami Beach paying compensation to Ms. Evans for the officer's wrongful conduct.

84.     On September 1, 2014, MBPD officer Adaymis Ortiz arrested Claudio Castillo and used unlawful force, tasering Mr. Castillo numerous times without any lawful cause or justification. Suit was filed in the United States District Court (2018-cv-23526) for the false arrests resulting in the City of Miami Beach paying compensation to Mr. Castillo for the officer's wrongful conduct.

85.     On February 28, 2016, MBPD officer Eugenio Abay (a repeat offender) unlawfully arrested Kyle Dion after Dion recorded the officer acting inappropriately, falsely stating, "It's illegal to record law enforcement due to a new law that just passed a couple of days ago." Abay then confiscated Mr. Dion's telephone and purposely deleted the recording. Suit was filed in the United States District Court (2017-cv-21651) for the false arrests resulting in the City of Miami Beach paying compensation to Mr. Dion for the officer's wrongful conduct.

86.     On April 4, 2016, MBPD officers Jesus Dominguez and Michelle Sayegh conducted an

unlawful pretextual traffic stop on Niki Livingston for the sole purpose of a fishing expedition to search for drugs. The officers harassed and battered Ms. Livingston. After no drugs were found on Ms. Livingston or in her vehicle she was falsely arrested and charged with a criminal traffic offense. Suit was filed in the United States District Court (2017-cv-20092) for the false arrest, malicious prosecution, and battery, resulting in the City of Miami Beach paying compensation to Ms. Livingston for the officers' wrongful conduct.

87.     On April 5, 2016, MBPD officer Clifford Beck unlawfully and in contravention of department policies and Florida traffic laws used his patrol car as a weapon to assault Mr. Mircea Halmu, running the car into Mr. Halmu intentionally causing serious bodily injury. Officer Beck then staged the scene to make it appear that Halmu ran into his vehicle and arrested Halmu to cover up his illegal behavior. Suit was filed in Southern District Court case 20-cv-21410 for which the CITY was forced to pay compensation to Mr. Halmu for Beck's illegal conduct.

88.     On March 24, 2017, MBPD officers Juan Balciero, Roger Gaitan, and Eugenio Abay, falsely arrested Richard Johnson for a drug offense, and then beat and battered Mr. Johnson. Suit is currently pending in Southern District of Florida case number 18-cv-23925.

89.     On September 18, 2017, and on October 25, 2018, MBPD officers Gustavo Blacio and David Cajuso unlawfully detained, arrested, and searched Alberonick Valsaint for just being present in the CITY. During the course of the arrest one or more officers purposely overtightened the handcuffs on Mr. Valsaint's wrists purposely to punish him. (see Southern District of Florida case number 21-cv-24143).

90.     On November 11, 2017, Mr. Ronald Saint-Vil began to video record MBPD officers Curtis Crews and Augustin Rodriguez placing a suspect into a prisoner transport van. For no other reason the officers determined to arrest Mr. Saint-Vil and tasered him without legal cause multiple times.

During the course of the arrest Rodriguez used racial epithets. Suit is pending in Southern District Court case 19-cv-24640.

91.     Demonstrating a long-fostered pattern of racism and violation of first amendment rights where the speech is intended to promote diversity and criticism of the MBPD'S racist policies, in 2019 the MBPD forced the removal of artwork commissioned to be placed in a public space within the CITY. (see Southern District of Florida case 20-cv-22583).

92.     On June 28, 2019, Mr. Cody Wade was attacked by MBPD officer Alfredo Garcia for no apparent lawful purpose as MBPD officer Agustin Rodriguez stood by and watched without intervening. Mr. Wade was rendered unconscious and dragged through the street causing severe head and bodily injuries. (see Southern District of Florida case 21-cv-22619).

93.     On December 10, 2019, MBPD officers Melissa Rosa, Daniella Moreno, and Corey Jackson attacked Mr. Jamie Senko while he was seated in his car. Mr. Senko had fallen asleep while waiting to proceed. Rather than taking reasonable measure to determine the circumstances, the officers acted irrationally and viciously, dragging Mr. Senko out of the car and causing serious bodily injury. (see Southern District of Florida case 20-cv-61845).

94.     On August 26, 2020, MBPD officer Richard Ocedo purposely allowed his K-9 to viciously maim a homeless man, Carmelo Callejas while other officers punched and kicked Mr. Callejas. The unlawful and excessive force was recorded by the officers' body worn cameras, however, in an effort to conceal the unlawful use of force the CITY has refused to produce the body worn camera recordings of the attack. (see Southern District of Florida case 21-cv-23294).

95.     This pattern of occurrences constitutes most, but not all of instances of rights violations by MBPD officers over the past two decades.

96.     The Plaintiffs allege, and intend to prove, that in each of the above instances, as well as

others, the officer or officers acted unlawfully and that the CITY failed to sufficiently discipline, train, retrain, terminate, or take any other reasonable action to remediate the officers' conduct to prevent further abuses of the rights of the public.

97. Noted separately, even where certain officers clearly demonstrate an individual pattern of rights violations—P. Jackson-Rice, Eugenio Abay, Dmitri Gotsis, Phillipe Archer, Thamyris Cardelle, Mishart Torres, Smith Orisme—the CITY historically fails to take action sufficient to remediate the officers' continued conduct.

98. The Plaintiffs allege, and intend to prove, that this pattern of deliberate indifference by the CITY and CLEMENTS was the moving force leading to the unprovoked attacks and unlawful arrests that occurred on July 26, 2021 causing them physical and emotional injury.

**July 26, 2021**

99. On July 26, 2021, the Plaintiffs were tourists in the CITY when they witnessed multiple MBPD officers beating Mr. Dalonta Crudup senseless inside the Royal Palm hotel. Both MR. VAUGHN and MR. COBB, obeying any and all instructions from officers to remain at a safe distance, began to use their cellular telephones to video record what they were witnessing.

100. At no time did either Plaintiff resist any police officer, make any movement or motion, or make any statement that could have been interpreted by the officers to suggest that they were a danger to any person present or were intending to interfere in any lawful execution of the officers' duties. Nor did they at any time fail to comply with any lawful orders given by any of the officers present.

101. Without provocation or other lawful cause, Defendant SABATER and other officers whose identities have not yet been determined (DOE Defendants) attacked the Plaintiffs, beating them and causing serious bodily injury.

102.     One or more of these Defendants began to taunt the Plaintiffs in a manner intended to intimidate them and demonstrating the very culture complained of here whereby MBPD officers believed they could act with impunity in abusing the general public—one Defendant took VAUGHN'S soft drink from him and began to drink it, appropriating it to his own use while mocking VAUGHN by making loud gulping sounds to show his satisfaction.

103.     The Defendants then determined to unlawfully arrest the Plaintiffs, executing and falsely swearing to reports and affidavits to establish probable cause. As a result, the Plaintiffs were illegally detained and taken to jail during which time they were continually harassed and intimidated by MBPD officers.

104.     Notwithstanding the corrupt efforts of the Defendants to refer criminal charges against the Plaintiffs, the prosecuting authority of Miami-Dade County declined to charge either Plaintiff after video recordings of the incident were made public.

105.     Further demonstrating the extent to which the CITY and CLEMENTS have permitted a culture of lawlessness to fester among its police officers creating the ingrained belief that they can violate rights without repercussion, the videos produced were those taken from the body worn cameras of the officers themselves who created the mayhem.

106.     As a result of the Defendant Officers' conduct the Plaintiffs' arrests became the subject of widespread media attention and broadcasts subjecting them to ridicule, intrusion, persistent invasion of privacy, and reputational harm.

**Too Little, Too Late**

107.     After the video recordings became public, CLEMENTS suspended five members of the police department—Sgt. Jose Perez, Officer Kevin Perez, Steven Cerrano, David Rivas, and Robert Sabater.

108.    In the days after July 26, 2021, CLEMENTS publicly acknowledged the malignant and abhorrent nature of the officers' actions attempting to distance himself, the MBPD, and/or the CITY from responsibility.

109.    However, as of July 26, 2021, the CITY, its administration, and CLEMENTS, knew or should have known of the long-standing widespread pattern of rights violations by MBPD officers and failed to take any action to stop it.

110.    CLEMENTS' *mea culpa* was too late, too little, or both, to prevent the injuries to the Plaintiffs.

111.    The suspended officers were subsequently charged with criminal offenses based on their actions of July 26, 2021 for felony battery, battery, and/or official misconduct.

### FEDERAL CAUSES OF ACTION

### COUNT I
### *Monell* claim - Liability pursuant to 42 U.S.C § 1983
### (Defendant CITY OF MIAMI BEACH)

112.    Plaintiffs VAUGHN and COBB re-allege paragraphs 1-11 and 14-111 above and incorporate them herein.

113.    As a direct and proximate result of the CITY'S failure to remediate a widespread spread pattern of civil rights and law violations by MBPD police officers the Plaintiff were the victims of excessive use of force and false arrest on July 26, 2021.

114.    Over the course of more than two decades MBPD officers have engaged in a continuous and unabated pattern of rights abuses resulting injury and false arrests of citizens and other members of the general public.

115.    A critical analysis of these rights abuses demonstrates an ingrained racial bias by MBPD officers condoned and tolerated by the CITY.

116.     As a direct and proximate result of the CITY'S failure to remediate a widespread spread pattern of civil rights and law violations by MBPD police officers the Plaintiff suffered serious bodily injury, emotional, reputational, and privacy damage which is permanent and/or will continue into the future.

117.     As a direct and proximate result of the CITY'S failure to remediate a widespread spread pattern of civil rights and law violations by MBPD police officers the Plaintiffs were forced to retain the services of counsel to redress their grievances and have agreed to pay counsel a reasonable fee.

**WHEREFORE** the Plaintiffs KHALID VAUGHN and SHERIFF COBB pray judgment of this Honorable Court granting compensatory damages, attorney's fees and all costs against CITY OF MIAMI BEACH, as well as all other relief that the Court deems just and proper.

### COUNT II
### Policy of Failing to Investigate/Discipline – 42 U.S.C.§1983
### (Defendant CITY OF MIAMI BEACH)

118.     Plaintiffs VAUGHN and COBB re-allege paragraphs 1-11 and 14-111 above and incorporate them herein.

119.     Given the position of authority of City of Miami police officers, which permits them to, among other things, effectuate arrests and exercise control of the persons arrested, the Defendant CITY had a legal duty to:

a.     thoroughly and impartially investigate incidents of alleged or possible false arrest and excessive use of force;

b.     thoroughly and impartially investigate incidents of alleged or possible racial or gender bias by MBPD officers in the performance of their duties;

c.     appropriately discipline police officers who are unable or unwilling to respect the constitutional rights of individuals or who violate constitutional rights, law

and/or department policy, including termination for repeat violators; and

d.      prevent police officers who are unable or unwilling to respect the constitutional rights of individuals, laws and rules and regulations, from performing tasks related to arrests or use of force.

120.    At all times material hereto, the Defendant CITY, through the Internal Affairs division of its police department, had an unwritten custom, policy or practice of failing to properly and impartially investigate allegations of misconduct against, and/or to administer appropriate discipline to, offending police officers.

121.    It was the unwritten custom or policy of the Defendant CITY to accept a police officer's version of events surrounding an allegation of misconduct, and/or to make disciplinary decisions based on factors other than an objective and impartial assessment of the facts underlying allegations of misconduct, and/or to allow police officers with a history of complaints of excessive force, unlawful arrests, and other violation of laws, rules or regulations to continue to serve in positions where the such were likely.

122.    The Defendant CITY's unwritten policy, practice or custom of failing to impartially investigate allegations of police misconduct, and failing to discipline, train and/or supervise officers involved in such conduct is the direct cause of such violations which occurred on July 26, 2021 as it has created an atmosphere where officers can violate rights without fear of supervision or discipline.

123.    Prior to July 26, 2021, the Defendant CITY had become aware of numerous complaints and allegations of misconduct initiated by citizens and other agencies against the MBPD officers. These complaints were investigated and reviewed by the MBPD'S Internal Affairs division.

124.    Despite a clear and obvious pattern of violations of rules and regulations resulting in abuse

of citizens' rights by MBPD officers, the Defendant CITY remained deliberately indifferent, and continued to conduct non-objective investigations resulting in findings intended to circumvent or avoid its responsibility to sufficiently discipline, reprimand or remediate officers' unlawful behavior.

125.    The Defendant CITY'S knowing indifference to the certainty of its officers continued failure to adhere to its rules and regulations was the direct and proximate cause of the wrongful acts causing the injuries to the Plaintiffs and was itself a deprivation of the Plaintiffs' rights.

126.    As a direct and proximate result of Defendant CITY'S deprivation of the Plaintiffs' rights they suffered Plaintiff suffered serious bodily injury, emotional, reputational, and privacy damage which is permanent and/or will continue into the future.

WHEREFORE, Plaintiffs VAUGHN and COBB demand judgment against Defendant CITY for compensatory damages, costs, reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and such other and further relief as the Court deems appropriate.

### COUNT III
### Deprivation of Rights- Violation of 42 U.S.C. §1983
### (Defendant ROBERT CLEMENTS, personally)

127.    Plaintiffs VAUGHN and COBB re-allege paragraphs 1-10, 12 and 14-111 above, and incorporate them herein.

128.    At all times material hereto, Defendant Clements was charged with the plenary duties and responsibilities to adopt and implement policies, practices, and procedures intended to ensure the protection of the rights of the public by identifying CITY police officers who demonstrate an unwillingness or inability to obey CITY rules and regulations which may result in violations of constitutional and legal rights.

129.    As such Defendant CLEMENTS owed a legal duty to the Plaintiffs to take all lawful

measures within his power as the City of Miami Beach Chief of Police to protect them from a deprivation of rights by exercising reasonable care to identify, supervise, train and/or eliminate customs and practices whereby MBPD officers continually violate the rights of the citizenry.

130. During the relevant time period, from when CLEMENTS became Chief of Police until July 26, 2021, CLEMENTS knew or should have known that there existed a policy, custom, and/or practice that had become ingrained and had the force of law within the MBPD whereby officers had become comfortable in the knowledge that they could violate departmental policies resulting in repeated instances of false arrests, excessive use of force, cruel treatment, brutality, intimidation, and mayhem without fear of repercussion of consequential disciple.

131. Despite this knowledge, or being reasonably charged with this knowledge, CLEMENTS failed to act to prevent the foreseeable abuses likely to occur. As such, at all times material hereto, Defendant CLEMENTS has remained deliberately indifferent to the reasonable certainty that rights abuses would continue unabated.

132. Defendant CLEMENTS' deliberate indifference to the widespread abuses that occurred prior to July 26, 2021 is the direct and proximate cause of the Plaintiffs' injuries because acceptance of the malign policies, customs, and practices and reasonable action with regard to the responsibilities for which he is charged would have certainly prevented such injuries. Those injuries include severe physical and emotional damages, reputational damage and/or invasion of privacy.

**WHEREFORE**, Plaintiff demands judgment against RICHARD CLEMENTS in his individual capacity for compensatory and punitive damages, costs, reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and such other and further relief as the Court deems appropriate.

## COUNT VI
### Supervisory Liability - Failure to Stop Unlawful Acts - 42 USC § 1983
### (Defendants JOHN DOES)

133.    Plaintiffs VAUGHN and COBB hereby incorporates paragraphs 1-10 and 13-111 as if specifically pled herein.

134.     Based on information and belief one or more of the JOHN DOE Defendants present at the time of the Plaintiffs' unlawful arrests and/or the other officers' unlawful use of force were in a position of supervisory authority.

135.    Based on information and belief these one or more supervisory JOHN DOE Defendants knew or should have known there was danger that subordinates were, or would, engage in unconstitutional conduct and had the authority to take steps to prevent the conduct yet failed to act.

136.    The Plaintiff assert, and intend to prove, that the JOHN DOE Defendants' failure to act was a direct and proximate cause of the Plaintiffs' injuries. Those injuries include severe physical and emotional damages, reputational damage and/or invasion of privacy.

137.    Plaintiffs will make a diligent effort to determine the identities of the JOHN DOE Defendants.

**WHEREFORE** Plaintiffs VAUGHN and COBB seeks entry of this Court's order of final judgment against the to be determined JOHN DOE Defendants for all compensatory and punitive damages incurred, attorney's fees, costs, and such other relief that the Court deems just and proper.

## COUNT V
### Failure to Intervene to Stop Unlawful Acts - 42 USC § 1983
### (Defendants JOHN DOE)

138.    The Plaintiffs hereby incorporate paragraphs 1-10 and 13-111 as if specifically set forth herein.

139.    Based on information and belief one or more of the JOHN DOE Defendants present at the time of the Plaintiffs' unlawful arrests and/or the other officers' unlawful use of force had a reasonable opportunity to intervene to prevent the constitutional violations were in a position of supervisory authority.

140.    At all times material hereto certain of the JOHN DOE Defendants had an affirmative duty to protect the Plaintiffs from constitutional violations by fellow officers.

141.    At all times material hereto certain of the JOHN DOE Defendants were present and witnessed the unconstitutional conduct of their fellow officers and had a reasonable opportunity to intervene to stop the fellow officers from attacking the Plaintiffs and/or then conducting false arrests.

142.    Instead, these JOHN DOE Defendants stood by and watched.

143.    As a direct and proximate result of these JOHN DOE Defendants' failure to intervene the Plaintiff suffered harm, both physical and emotional, as well as reputational, for which they are directly liable.

    **WHEREFORE** the Plaintiffs VAUGHN and COBB pray judgment of the Court against the JOHN DOE Defendants for compensatory and punitive damages, as well attorney's fees and costs, and such other relief as the Court deems just and proper.

## COUNT VI
### False Arrest/Imprisonment – pursuant to 42 U.S.C § 1983
**(Defendants SABATER and JOHN DOES)**

144.    The Plaintiffs hereby incorporate paragraphs 1-10 and 13-111 as if specifically set forth herein.

145.    On July 26, 2021, the officer Defendants did unlawfully detain and arrest the Plaintiffs without probable cause.

146.     The arrests were corrupt and intended to falsely conceal these Defendants' excessive use of force.

147.     All criminal charges resulting from the illegal arrests were "no info'ed" by the prosecuting authority and the Plaintiffs have been enlisted as witnesses against the Defendants in active criminal proceedings.

148.     As a direct and proximate result of the officer Defendants' unlawful arrests the Plaintiffs suffered serious bodily injury, loss of liberty, and emotional damage which is permanent and/or will continue into the future.

     **WHEREFORE** the Plaintiffs KHALID VAUGHN and SHERIFF COBB pray judgment of this Honorable Court granting compensatory damages and punitive damages, attorney's fees and all costs against ROBERT SABATER and the JOHN DOES defendants, as well as all other relief that the Court deems just and proper.

**COUNT VII**
**Malicious Prosecution – pursuant to 42 U.S.C § 1983**
**(Defendants SABATER and JOHN DOES)**

149.     The Plaintiffs hereby incorporate paragraphs 1-10 and 13-111 as if specifically set forth herein.

150.     On July 26, 2021 the officer Defendants instituted criminal proceedings against the Plaintiffs by effecting false arrests, executing affidavits wherein they knowingly provided false information intended to establish probable cause, and delivering the Plaintiffs to the county jail for prosecution.

151.     All criminal charges resulting from the illegal arrests were "no info'ed" by the prosecuting authority and the Plaintiffs have been enlisted as witnesses against the Defendants in active criminal proceedings which include official misconduct.

152.    As a direct and proximate result of the officer Defendants' malicious prosecution the Plaintiffs suffered serious bodily injury, loss of liberty, and emotional damage which is permanent and/or will continue into the future.

**WHEREFORE** the Plaintiffs KHALID VAUGHN and SHERIFF COBB pray judgment of this Honorable Court granting compensatory damages and punitive damages, attorney's fees and all costs against ROBERT SABATER and the JOHN DOES defendants, as well as all other relief that the Court deems just and proper.

**COUNT VIII**
**Excessive Use of Force – pursuant to 42 U.S.C § 1983**
**(Defendants SABATER and JOHN DOES)**

153.    The Plaintiffs hereby incorporate paragraphs 1-10 and 13-111 as if specifically set forth herein.

154.    On July 26, 2021, the Defendants, alone or in concert, beat and battered the Plaintiffs without lawful cause. The force was excessive, unjustified and gratuitous, serving no lawful purpose.

155.    As a direct and proximate consequence of the excessive force the Plaintiffs suffered serious bodily injury, emotional distress, and reputational harm which remain and which are likely to continue into the future.

**WHEREFORE** the Plaintiffs KHALID VAUGHN and SHERIFF COBB pray judgment of this Honorable Court granting compensatory damages and punitive damages, attorney's fees and all costs against ROBERT SABATER and the JOHN DOES defendants, as well as all other relief that the Court deems just and proper.

## STATE TORT CLAIMS

### COUNT IX
### Statutory Liability pursuant to Fla. Stat. § 768.28
### (Defendant CITY OF MIAMI BEACH-False Arrest and Battery)

156.     The Plaintiffs hereby incorporate paragraphs 1-11 and 14-111 as if specifically set forth

herein.

157.     Pursuant to Florida Statute § 768.28, and under certain conditions, the CITY is liable for

the wrongful conduct of its police officers.

158.     In the alternative to any averments set forth above, the Plaintiffs allege that the Defendant

Officers were acting within the scope of their employment and that their damages as a result of

false arrest and battery were the result of conduct by MBPD officers that was not committed in

bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of

human rights, safety, or property.

159.     The Defendant Officers' wrongful conduct breached a duty of care owed to the Plaintiff to

act reasonably to prevent unlawful detainment and physical injury.

160.     As a direct and proximate consequence of the excessive force the Plaintiffs suffered serious

bodily injury, emotional distress, and reputational harm which remain, and which are likely to

continue into the future.

     **WHEREFORE** the Plaintiffs KHALID VAUGHN and SHERIFF COBB pray judgment

punitive damages, attorney's fees and all costs against the CITY OF MIAMI BEACH, as well as

all other relief that the Court deems just and proper.

### COUNT X
### Statutory Liability pursuant to Fla. Stat. § 768.28
### (Defendant CITY OF MIAMI BEACH-Failure to Intervene)

161.     The Plaintiffs hereby incorporate paragraphs 1-11 and 14-111 as if specifically set forth

herein.

162.    Pursuant to Florida Statute § 768.28, and under certain conditions, the CITY is liable for the wrongful conduct of its police officers.

163.    At all times material hereto, the JOHN DOE Defendants who failed to intervene to prevent the false arrests and physical injury to the Plaintiffs as they stood by and witnessed the violation of law by their fellow officer breached a duty of care owed to the Plaintiffs.

164.    In the alternative to any averments set forth above, the Plaintiffs allege that these JOHN DOE were acting within the scope of their employment and that the damages as a result of the failure to intervene were the result of conduct by MBPD officers that was not committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

165.    The Defendant Officers' wrongful conduct breached a duty of care owed to the Plaintiff to act reasonably to prevent unlawful detainment and physical injury.

166.    As a direct and proximate consequence of the excessive force the Plaintiffs suffered serious bodily injury, emotional distress, and reputational harm which remain, and which are likely to continue into the future.

        **WHEREFORE** the Plaintiffs KHALID VAUGHN and SHERIFF COBB pray judgment of this Honorable Court granting compensatory damages and all costs against the CITY OF MIAMI BEACH, as well as all other relief that the Court deems just and proper.

**COUNT XI**
**False Arrest – Florida Tort**
**(Defendants SABATER and JOHN DOES)**

167.    The Plaintiffs hereby incorporate paragraphs 11-10 and 13-111 as if specifically set forth herein.

168.    On July 26, 2021, Defendants SABATER and/or certain of the JOHN DOE Defendants did unlawfully arrest Plaintiffs VAUGHN and COBB without probable cause.

169.    The arrests were corrupt and intended to conceal and/or falsely justify these officers' malign and unlawful conduct.

170.    As a direct and proximate consequence of these officers' unlawful conduct in arresting the Plaintiffs they suffered serious bodily injury, emotional distress, and reputational harm which remain, and which are likely to continue into the future.

    **WHEREFORE** the Plaintiffs KHALID VAUGHN and SHERIFF COBB pray judgment of this Honorable Court granting compensatory damages and all costs against ROBERT SABATER and the JOHN DOES defendants, as well as all other relief that the Court deems just and proper.

## COUNT XII
### Battery – Florida Tort
**(Defendants SABATER and JOHN DOES)**

171.    The Plaintiffs hereby incorporate paragraphs 1-10 and 13-111 as if specifically set forth herein.

172.    On July 26, 2021 Defendants SABATER and/or certain of the JOHN DOE Defendants did unlawfully touch or strike Plaintiffs VAUGHN and COBB against their will and without any justifiable cause.

173.    As a direct and proximate consequence of the unlawful touch or strike the Plaintiffs suffered serious bodily injury, emotional distress, and reputational harm which remain and which are likely to continue into the future.

    **WHEREFORE** the Plaintiffs KHALID VAUGHN and SHERIFF COBB pray judgment of this Honorable Court granting compensatory damages and all costs against ROBERT

SABATER and the JOHN DOES defendants, as well as all other relief that the Court deems just and proper.

**COUNT XIII**
**Malicious Prosecution – Florida Tort**
**(Defendants SABATER and JOHN DOES)**

174.    The Plaintiffs hereby incorporate paragraphs 1-10 and 13-111 as if specifically set forth herein.

175.    As a direct and proximate consequence of the unlawful touch or strike the Plaintiffs suffered serious bodily injury, emotional distress, and reputational harm which remain, and which are likely to continue into the future.

176.    On July 26, 2021, Defendants SABATER and/or certain of the JOHN DOE Defendants did unlawfully arrest the Plaintiffs VAUGHN and COBB without any probable cause.

177.    Thereafter, SABATER and these certain of the JOHN DOE Defendants falsely and with malice executed reports and affidavits instigating criminal prosecution.

178.    The criminal prosecutions of the Plaintiffs were terminated favorably.

179.    As a direct and proximate consequence of the malicious prosecution the Plaintiffs suffered serious bodily injury, emotional distress, and reputational harm which remain, and which are likely to continue into the future.

**WHEREFORE** the Plaintiffs KHALID VAUGHN and SHERIFF COBB pray judgment of this Honorable Court granting compensatory damages and all costs against ROBERT SABATER and the JOHN DOES defendants, as well as all other relief that the Court deems just and proper.

## COUNT XIV
## Negligent Training – Florida Tort
**(Defendant CITY OF MIAMI BEACH)**

180.     The Plaintiffs hereby incorporate paragraphs 1-11 and 14-111 as if specifically set forth herein.

181.     In the alternative to any averments otherwise stated in this complaint, the Plaintiffs allege that at all times material hereto SABATER and the JOHN DOE defendants were acting outside of the scope of their employment on July 26, 2021, when they unlawfully arrested and/or battered the Plaintiffs because they acted for their own malicious purposes.

182.     At all times material hereto, the CITY had a duty to properly train the officers of the MBPD to reduce the foreseeability of unlawful arrests, battery, and assault of member of the general public. This included the duty to properly train officers in the legal standards constituting probable cause for arrest, and/or the wrongful nature of using the color of law to gratify their own purposes.

183.     At all times material hereto, the CITY'S training of MBPD officers, including evaluation to determine the officers' proficiency in the training, was deficient to comply with that duty. Officers receive all too brief training, guidance from other improperly trained officers, and training that consists of no more than emails instructing them to read written policies with no accountability to determine whether they actually read the policies or understand them.

184.     The negligent training of MBPD officers was a direct and proximate cause of the unlawful arrests and physical abuse of the Plaintiffs on July 26, 2021 and the injuries that resulted. Consequently, the CITY'S negligent training caused Plaintiffs to suffer serious bodily injury, emotional distress, and reputational harm which remain, and which are likely to continue into the future.

**WHEREFORE** the Plaintiffs KHALID VAUGHN and SHERIFF COBB pray judgment

of this Honorable Court granting compensatory damages and all costs against the CITY OF
MIAMI BEACH, as well as all other relief that the Court deems just and proper.

**COUNT XV**
**Negligent Supervision – Florida Tort**
**(Defendant CITY OF MIAMI BEACH)**

185.    The Plaintiffs hereby incorporate paragraphs 1-11 and 14-111 as if specifically set forth
herein.

186.    In the alternative to any averments otherwise stated in this complaint, the Plaintiffs allege
that at all times material hereto SABATER and the JOHN DOE defendants were acting outside of
the scope of their employment on July 26, 2021, when they unlawfully arrested and/or battered the
Plaintiffs because they acted for their own malicious purposes.

187.    At all times material hereto, the CITY had a duty to properly supervise the officers of the
MBPD to reduce the foreseeability of unlawful arrests, battery, and assault of member of the
general public. This included the duty to institute policies, procedures, customs and/or practices to
properly monitor officers' conduct during the time they were supposed to be performing their work
assignments. Such monitoring should consist of supervisory control to ensure officers'
accountability. Instead, officers were permitted to roam free throughout the CITY committing
unlawful arrests and acts of violence to gratify their own malicious and/or racial objectives.

188.    The negligent supervision of MBPD officers was a direct and proximate cause of
the unlawful arrests and physical abuse of the Plaintiffs on July 26, 2021 and the injuries that
resulted. Consequently, the CITY'S negligent supervision caused Plaintiffs to suffer serious bodily
injury, emotional distress, and reputational harm which remain and which are likely to continue
into the future.

**WHEREFORE** the Plaintiffs KHALID VAUGHN and SHERIFF COBB pray judgment of

this Honorable Court granting compensatory damages and all costs against the CITY OF MIAMI

BEACH, as well as all other relief that the Court deems just and proper.

<u>**DEMAND FOR TRIAL BY JURY**</u>

The Plaintiffs KHALID VAUGHN and SHARIF COBB hereby demand trial by jury as to

each cause of action and claim set forth herein.

Respectfully Submitted this 11th day of April, 2022

**Law Offices of David A. Frankel, P.A.**
4601 Sheridan Street, Suite 213
Hollywood, Florida 33021
(954) 683-0300
David@BlueLotusLaw.com
eService@BlueLotusLaw.com
paralegal@BlueLotusLaw.com


By: /s/ *David A. Frankel*

David A. Frankel Esq.
Fla. Bar. No. 741779

LAW OFFICES OF

# DAVID A. FRANKEL

4601 SHERIDAN STREET, SUITE 213                                          TELEPHONE: 954-683-0300
HOLLYWOOD, FLORIDA 33021.                                              DAVID@BLUELOTUSLAW.COM

**\*\* THIS CORRESPONDENCE IS SENT PURSUANT TO § 768.28(6)(a), <u>FLA.</u> <u>STAT.</u>\*\***
**<u>CERTIFIED/RETURN RECEIPT REQUESTED</u>**


August 24, 2021


Dan Gelber                                      Raul J. Aguila, Esquire
Mayor                                           City Attorney
City of Miami Beach                             City of Miami Beach
1700 Convention Center Drive                    1700 Convention Center Drive
Miami Beach, FL  33139                          Miami Beach, FL  33139

Richard Clements                                Florida, Dept. of Financial Services
Chief of Police                                 Division of Risk Management
Miami Beach Police Department                   200 East Gaines Street
1100 Washington Avenue                          Tallahassee, FL  32399-0336
Miami Beach, FL  33139

       Re:    Our client:    Khalid L. Vaughn
              Date/Incident: 07/26/2021

To Whom it May Concern:

Please be advised that this the undersigned represents the above-named claimant for injuries and damages arising out of an incident that occurred on July 26, 2021.

This correspondence will serve as Claimant's Notice pursuant to the requirements of § 768.28(6)(a), <u>Fla.</u> <u>Stat.</u> for violation of Khalid L. Vaughn's federally protected constitutional rights, as well as additional tort claims, including false arrest, false imprisonment, excessive use of force, supervisory liability, 4th and 14th Amendment violations, and violation of policies and procedures.

The undisputed facts are that on July 26, 2021, Khalid L. Vaughn was a patron of the Royal Palm Hotel in Miami Beach when he was assaulted and then arrested by Miami Beach Police Officers.  At the time of the incident, Mr. Vaughn was standing in the lobby of the hotel and witnessed the police officers beating and kicking an arrestee and used his cellular telephone to videotape the incident.  Suddenly, Mr. Vaughn was tackled by Miami Beach Police Officers, beaten, and arrested.

The litany of rights abuses, intimidation tactics, falsified reports, and violations of policies and procedures committed by the City of Miami Beach Police Officers is well known to the City. The purposeful intent of the City to avoid proper supervision and discipline of these officers is

**COMPOSITE EXHIBIT "A"**

August 24, 2021
Page Two

patently obvious.  However, if the City considers it necessary at this time for more clarification of the circumstances surrounding the incident which led to Mr. Vaughn suffering injuries, you are kindly asked to contact me immediately.

Because of the foregoing, we are hereby making a claim against the City of Miami Beach and its officers for payment of all damages sustained by our client, including  punitive  damages, and  attorney's  fees.  If you believe that the City or the officers do not have tort responsibility in the above- captioned incident, please advise the undersigned immediately in the form of a written denial. Otherwise, we  shall  expect  the  City  and  its  officers  to  promptly  begin  good  faith negotiations for the fair settlement of this claim.

Pursuant to § 768.28(6)(a), Fla. Stat., please see the following:

a.	Claimant:  Khalid L. Vaughn

b.	Date of Birth:  12/02/1992

c.	Social Security Number:   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

d.	Place of Birth:   New York, New York

There exist no adjudicated penalties (no fines, fees, Victim Restitution Fund, and other judgments) in excess of $200.00 owed by the Claimant to the State, its agencies, officers, or subdivisions.

If we have failed to comply with § 768.28(6)(a), Fla. Stat. in any manner whatsoever, please advise accordingly by return mail specifying how we have failed.

Govern yourselves accordingly.

Very truly yours,

Law Offices of David A. Frankel, P.A.

*s/ David A. Frankel*
DAVID A. FRANKEL

DAF:lls

LAW OFFICES OF

# DAVID A. FRANKEL

4601 SHERIDAN STREET, SUITE 213                                          TELEPHONE: 954-683-0300
HOLLYWOOD, FLORIDA 33021.                                          DAVID@BLUELOTUSLAW.COM

**\*\* THIS CORRESPONDENCE IS SENT PURSUANT TO § 768.28(6)(a), <u>FLA.</u> <u>STAT.</u>\*\***
**<u>CERTIFIED/RETURN RECEIPT REQUESTED</u>**

August 24, 2021

Dan Gelber                                          Raul J. Aguila, Esquire
Mayor                                                City Attorney
City of Miami Beach                                  City of Miami Beach
1700 Convention Center Drive                         1700 Convention Center Drive
Miami Beach, FL  33139                               Miami Beach, FL  33139

Richard Clements                                     Florida, Dept. of Financial Services
Chief of Police                                      Division of Risk Management
Miami Beach Police Department                        200 East Gaines Street
1100 Washington Avenue                               Tallahassee, FL  32399-0336
Miami Beach, FL  33139

      Re:    Our client:    Sharif J. Cobb
              Date/Incident: 07/26/2021

To Whom it May Concern:

      Please be advised that this the undersigned represents the above-named claimant for injuries and damages arising out of an incident that occurred on July 26, 2021.

      This correspondence will serve as Claimant's Notice pursuant to the requirements of § 768.28(6)(a), <u>Fla.</u> <u>Stat.</u> for violation of Sharif J. Cobb's federally protected constitutional rights, as well as additional tort claims, including false arrest, false imprisonment, excessive use of force, supervisory liability, 4th and 14th Amendment violations, and violation of policies and procedures.

      The undisputed facts are that on July 26, 2021, Sharif J. Cobb was a patron of the Royal Palm Hotel in Miami Beach when he was assaulted and then arrested by Miami Beach Police Officers. At the time of the incident, Mr. Cobb was standing in the lobby of the hotel and witnessed the police officers beating and kicking an arrestee and used his cellular telephone to videotape the incident. Suddenly, Mr. Cobb was tackled by Miami Beach Police Officers, beaten, and arrested.

The litany of rights abuses, intimidation tactics, falsified reports, and violations of policies and procedures committed by the City of Miami Beach Police Officers is well known to the City. The purposeful intent of the City to avoid proper supervision and discipline of these officers is patently obvious. However, if the City considers it necessary at this time for more clarification of

August 24, 2021
Page Two

the circumstances surrounding the incident which led to Mr. Cobb suffering injuries, you are kindly asked to contact me immediately.

Because of the foregoing, we are hereby making a claim against the City of Miami Beach and its officers for payment of all damages sustained by our client, including punitive damages, and attorney's fees.  If you believe that the City or the officers do not have tort responsibility in the above- captioned incident, please advise the undersigned immediately in the form of a written denial. Otherwise, we shall expect the City and its officers to promptly begin good faith negotiations for the fair settlement of this claim.

Pursuant to § 768.28(6)(a), Fla. Stat., please see the following:

a.      Claimant:  Sharif J. Cobb

b.      Date of Birth:  08/01/1993

c.      Social Security Number:  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

d.      Place of Birth:  Cherry Hill, New Jersey

There exist no adjudicated penalties (no fines, fees, Victim Restitution Fund, and other judgments) in excess of $200.00 owed by the Claimant to the State, its agencies, officers, or subdivisions.

If we have failed to comply with § 768.28(6)(a), Fla. Stat. in any manner whatsoever, please advise accordingly by return mail specifying how we have failed.

Govern yourselves accordingly.

Very truly yours,

Law Offices of David A. Frankel, P.A.

s / David A. Frankel
DAVID A. FRANKEL

DAF:lls